UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA (ATLANTA)

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.    17-56755-pwb |
| HARRY JAMES FREESE, | ) | |
| | ) | CHAPTER    13 |
| Debtor. | ) | |
| _____ | ) | JUDGE    PAUL W. BONAPFEL |
| TOWD POINT MASTER FUNDING TRUST | ) | |
| 2017-PM18 | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| v. | ) | |
| | ) | |
| HARRY JAMES FREESE, Debtor, | ) | |
| and MARY IDA TOWNSON, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

NOTICE OF HEARING

NOTICE IS HEREBY GIVEN that a motion for relief from the automatic stay has been filed in the above-styled case by Movant. In the event that a hearing cannot be held within thirty (30) days from the filing of the motion for relief from the automatic stay as required by 11 U.S.C. § 362, Movant waives this requirement and agrees to the next earliest possible date, as evidenced by signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. **The undersigned consents to the automatic stay (and any related co-debtor stay) remaining in effect with respect to Movant until the court orders otherwise.**

**Hearing will be held on the 28th day of March, 2018, at 1:30 p.m., Courtroom 1401**, at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303**.**

Within three days of the date of this notice, Movant's attorney, or a pro se Movant, shall serve the motion and this notice upon the debtors, trustee, and their attorneys of record, and shall file a certificate of service within three days of service. BLR 9007-2 NDGA.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one. If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk of Court at the address below, with a copy to the Movant and the Trustee, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and to whom you served the response, and include the addresses. Mail or deliver your response so that

it is received by the Clerk at least two business days before the hearing.  Mail to: United States Bankruptcy Court, 75 Ted Turner Drive, SW, Atlanta, GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting relief.**

This notice is sent by the undersigned pursuant to LBR 9004-1(6).

DATE: 2-21-2018                                         /s/ Sarah Wyeth McLaughlin
                                                                        Sarah Wyeth McLaughlin, GBN 779413


Padgett Law Group
6267 Old Water Oak Road
Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (fax)
swyeth@padgettlaw.net
*Attorney for Movant*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA (ATLANTA)

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.    17-56755-pwb |
| HARRY JAMES FREESE, | ) | |
| | ) | CHAPTER    13 |
| Debtor. | ) | |
| _____ | ) | JUDGE    PAUL W. BONAPFEL |
| TOWD POINT MASTER FUNDING TRUST | ) | |
| 2017-PM18 | ) | |
| | ) | CONTESTED MATTER |
| Movant, | ) | |
| v. | ) | |
| | ) | |
| HARRY JAMES FREESE, Debtor, | ) | |
| and MARY IDA TOWNSON, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

<u>MOTION TO MODIFY AUTOMATIC STAY
AND WAIVER OF THE 30-DAY REQUIREMENT OF 11 U.S.C. § 362(e)</u>

COMES NOW, TOWD POINT MASTER FUNDING TRUST 2017-PM18 ("Movant"

herein), a secured creditor and/or party in interest in the above-captioned matter, and respectfully

shows the Court as follows:

1.

This Motion is made pursuant § 362(d) of the Bankruptcy Code for relief from the

automatic stay for all purposes allowed under applicable law and the contract between the

parties, including, but not limited to, the right to foreclose on certain real property by private

power of sale contained in a certain Security Deed or the right to initiate a replevin action to seek

possession of and foreclose certain Collateral pursuant to the underlying loan documents and

applicable state law.

2.

The Debtors filed a petition under Chapter 13 of the Bankruptcy Code on April 12, 2017.

3.

The Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 362.

4.

Mary Ida Townson is the duly designated Chapter 13 Trustee.

5.

Movant is the servicer of a loan secured by that certain 1998 64 x 32 Redman Manufactured Home, Worthington Model, Serial Numbers 14901729A and 14901729B, together with all fixtures, furniture, and appliances purchased with the manufactured home (collectively the "Collateral"), by virtue of a Manufactured Home Retail Installment Contract (the "Contract") executed by Debtor, attached hereto as Exhibit "A" along with the Certificates of Title, which are attached hereto as Exhibit "B". The Collateral is titled in the name of Debtor. Debtor is liable on the Contract.

6.

Debtor's Plan provides for Debtors to make direct monthly contractual payments to Movant, beginning with the May 2, 2017 payment.  As of February 14, 2018, Debtor is in default to Movant in the amount of $621.00, representing the January 2, 2017 through February 2, 2018 payments in the amount of $424.07 with $227.14 in suspense.  Therefore, Movant is not receiving payments on the account and the Collateral is depreciating in value. The stay should be terminated for cause, including the lack of adequate protection of an interest in the collateral of Movant, pursuant to 11 U.S.C § 362(d)(1).

7.

There is no equity in the Collateral and it is not necessary for an effective reorganization of the Debtor. Debtor's Schedule D: Creditors Who Have Claims Secured By Property values the Collateral at $31,364.00. Movant filed a Proof of Claim for $31,278.47, with $0.00 in arrearages.

8.

As of February 14, 2018, the total unpaid principal balance is $29,922.45 and the loan balance is $30,724.02.

9.

Movant, by and through undersigned counsel, waives the requirement of 11 U.S.C. § 362(e) and agrees that, if a hearing cannot be held within thirty (30) days from the filing of this Motion, said hearing shall be set on the next available date.

10.

Because of the default and clear inability of Debtors to make all required contractual payments, Movant is not adequately protected. Movant's interest in the Collateral would be irreparably harmed by the continuation of the automatic stay. The possibility of equity above the indebtedness, would not constitute adequate protection as contemplated by the Bankruptcy Code which does not provide for Debtors to enjoy the use of the Collateral without complying with the terms of the confirmed Plan.

11.

Because the loan documents so provide, Movant is entitled to reasonable attorney's fees and costs of $1,031.00 incurred in bringing this motion.

12.

Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

13.

Movant requests that on entry of an Order granting this Motion and modifying the automatic stay that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, and that the secured portion of Movant's claim be deemed withdrawn without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Movant consents to return to the Chapter 13 Trustee any payments received from Trustee on account of Movant's secured claim after entry of an Order modifying the automatic stay on the Collateral.

14.

Movant is without sufficient information to form a belief whether there are additional liens on the Collateral or to determine the amount of any encumbrances that may consume any available equity in the Collateral. Debtors' Schedules indicate that there are no additional liens on the Collateral. Movant's loan balance, along with costs of sale render little or no equity in the Collateral to benefit the estate.

15.

Movant asserts that there is no additional Collateral for its loan that can be foreclosed upon.

16.

Should stay relief be granted as to the Collateral, Movant pursuant to terms of the Contract may foreclose its security interest and seek possession of the Collateral.

17.

Movant requests that if the stay is modified that Movant be permitted to contact Debtors and/or Debtors' counsel, as appropriate, through its agents, servicers and representatives for the purpose to enter into discussion and consideration of loss mitigation options, as relating to the

loan documents. Movant asserts that Debtors and their counsel are responsible for filing any court documents required for approval of any such agreement that may arise from such discussions.

18.

Pursuant to applicable local rules and O.C.G.A. § 44-14-162.2, the name of the person or entity who has full authority to negotiate, amend or modify the terms of the aforementioned indebtedness is: Ditech Financial LLC; P.O. 0049, Palatine, IL 60055-0049; Telephone: (888) 298-7785.

WHEREFORE, Movant moves this Court for an Order, after Notice and Hearing, terminating the automatic stay as to Movant and the Collateral so that Movant (and any successors or assigns) may take any and all steps under non-bankruptcy law necessary to exercise any and all rights it may have under the law and its loan documents; to enforce its remedies to foreclose upon and obtain possession of the Collateral; waiving the right to a hearing within thirty (30) days as provided by 11 U.S.C. § 362(e); that provides that Trustee make no further payments on account of Movant's secured claim; that awards Movant its reasonable fees and costs for this Motion; that pursuant to 11 U.S.C. § 362 directs Trustee to abandon the Collateral; waiving the provisions of Fed. R. Bankr. P. 4001(a)(3); exempting Movant from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case; that permits Movant to contact Debtor(s) or Debtor(s)' counsel, through its agents, servicers and representative for the purpose of engaging in discussions and consideration for possible loss mitigation options; and for such other and further relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 21st  day of _February, 2018.

/s/ Sarah Wyeth McLaughlin
Sarah Wyeth McLaughlin, GBN 779413

Padgett Law Group
6267 Old Water Oak Rd, Ste. 203
Tallahassee, FL 32312
(850) 422-2520 swyeth@padgettlaw.net

Exhibit "A"

## MANUFACTURED HOME - RETAIL INSTALLMENT CONTRACT - GEORGIA.

| | | |
|---|---|---|
| No: | **Seller:   CIRCLE R HOUSING SUPERCENTER** | **Buyer:** HARRY J FREESE |
| Date: 08/26/98 | Address: **2001 WHITESVILLE ROAD** | Address: **1819 BLUE CREEK RD** |
| "Contract" means this | **LAGRANGE, GA 31040** | **HOGANSVILLE, GA 30230** |
| document | "We", "us" and "our" mean the Seller above and, to the extent that Seller has sold this Contract or assigned its rights hereunder, its successors and assigns. | "You" and "your" mean each Buyer above, separately and together. |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your downpayment of $ 9,000.00 |
|---|---|---|---|---|
| 8.568  % | $  81,934.20 | $     45,891.00 | $     127,825.20 | $   136,825.20 |

Payment Schedule: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: Monthly Beginning |
|---|---|---|
| 360 | $   355.07 | 09/25/1998 |
| N/A | $ | |
| N/A | $ | |

**Security:** You are giving us a security interest in the Manufactured Home purchased and certain related household goods.

**Late Charge:** Each Time you fail to make a payment in full within 15 days after it is due, you will pay a late charge of five percent (5%) of the unpaid amount of such payment or five dollars ($5), whichever is less.

**Prepayment:** If you pay off this Contract early, you will not have to pay a penalty.

**Assumption:** Someone buying your Manufactured Home may be allowed to assume this Contract on its original terms, subject to certain conditions.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

"e" means an estimate.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| Manufactured Home Price | | $   54,855.00 |
| (including sales tax of $   3,105.00   ) | | |
| Buyer Protection/Service Plan Paid to: | *$ | 0.00 |
| 1. Cash Price | | $   54,855.00 |
| Manufacturer's Rebate $   0.00 | | |
| Cash Downpayment    $   9,000.00 | | |
| 2. Subtotal | $   9,000.00 | |
| Trade-in Allowance    $   0.00 | | |
| Less: Amount Owing    $   0.00 | | |
| To: | | |
| 3. Net Trade-in $    0.00 | | |
| 4. Total Downpayment (line 2 plus line 3) | | $   9,000.00 |
| 5. Unpaid Balance of Cash Price (line 1 minus line 4) | $ | 45,855.00 |
| 6. Fees Paid to Others: | | |
| Paid to Public Officials - Filing Fees Only | $ | 36.00 |
| Paid to Public Officials - Other than Filing Fee | $ | 0.00 |
| Paid to Insurance Companies or gap providers | *$ | 0.00 |
| (To: _____ ) | | |
| (To: _____ ) | | |
| (To: _____ ) | | |
| 7. Amount Financed (line 5 + line 6) | | $   45,891.00 |
| 8. Prepaid Finance Charges | | |
| A. Points: 8.000  % | $ | 3,671.28 |
| B. Other | $ | 0.00 |
| Total Prepaid Finance Charges | $ | 3,671.28 |
| 9. Total Principal Balance (line 7 + line 8) | $ | 49,562.28 |

*You acknowledge and agree that some substantial portion of these amounts may be paid to or retained by Seller.  X [signature]   D52

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the "Total Sale Price" for the Manufactured Home (as defined below) by making "your downpayment" and then paying us the "Total of Payments". You will pay the Total of Payments by paying to us monthly payments in the number and amount of payments shown in the "Payment Schedule". Your first payment will be due on the first date shown under "When Payments are Due:" and subsequent payments wil be due on the same day of each month thereafter. The Payment Schedule assumes that

your payments are received by us when due. You will make all payments to NationsCredit Manufactured Housing Corporation, P.O. Box 790287, St. Louis, Missouri 63179-0257 or any other address to which we later tell you (in writing) to send your payments. We compute the Finance Charge on the unpaid principal of the Contract balance at the Contract Rate. The "Contract Rate" is 7.7500 % per annum, except that if this box ☐ is checked, the Contract Rate will increase to N/A % per annum on the first anniversary of this Contract and will further increase to N/A % on the second anciversary of this Contract. The last Contract Rate disclosed will the continue through the remaining term of the Contract.

**SALE:** You agree to purchase from Seller, over time, subject to the terms of this Contract, the manufactured home described below, together with any related furnishings, equipment, appliances and accessories included at the time of purchase (together, the "Maunfactured Home").

| Manufacturer | Model Name & Number | Year |
|---|---|---|
| **REDMAN** | **WORTHINGTON** | **98** |
| Serial Number | Length Width Color | ☒ New   ☐ Used |
| 14901729 | 064 032 | |
| ☐ Tires and Wheels | ☐ Axles | ☒ Skirting |
| ☒ Oven/Range | ☒ Refrigerator | |
| ☐ Washer | ☐ Dryer | |
| ☒ A/C Unit(s) | ☐ Awning(s) | |
| ☐ Accessory Shed | | |
| **STEPS** | | |

Location of Manufactured Home after delivery to Buyer:

**1819 BLUE CREEK RD**

**HOGANSVILLE, GA 30230**

Description of Trade-In:

GEORGIA MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT - Chattel Only, Fixed Rate

[signature]

Page 1 of 4

**OPTIONAL CREDIT INSURANCE:** Credit life and credit disability (accident and health or accident and sickness) insurance are voluntary and are not required to obtain credit. Seller will not provide them unless you sign and agree to pay the additional cost. If you want such voluntary insurance, Seller will obtain it for you (if you qualify for coverage).

Credit Life: Insured _____

☐ Single ☐ Joint  Cost $ ___0.00___ Term ___0___

Credit Disability: Insured _____

☐ Single ☐ Joint  Cost $ ___0.00___ Term ___0___

Your signature below means you want only the optional insurance coverages, if any, specified above. If none are quoted, you have declined any coverages Seller offered.

_____   _____   _____   _____
Buyer                                      d/o/b      Buyer                                      d/o/b

**REQUIRED PROPERTY INSURANCE:** You are required, and agree, to maintain physical damage insurance coverage protecting the Manufactured Home against loss by fire, hazards included within the term "extended coverage", and any other hazards, including floods, or instances, such as trip insurance, for which we require insurance, until this Contract is paid in full, in an amount equal to the lesser of the actual cash value of the Manufactured Home and the remaining unpaid balance owing under this Contract, with deductibles not to exceed $500. This "Required Insurance" must be issued by an insurer and have terms and conditions satisfactory to us, name "NationsCredit Manufactured Housing Corporation and its successors and assigns, as their interests may appear", as loss payee, and provide that such insurance will not be canceled or modified without at least 20 days prior written notice to the loss payee. You may purchase insurance or provide existing coverage through any insurance company that is reasonably acceptable to us. If you get insurance from or through Seller, you will pay $___0.00___ for ___0___ months of coverage.

You agree to provide us with evidence of renewals of the Required Insurance at least 20 days prior to any scheduled termination. We may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Manufactured Home or we may use any insurance proceeds to reduce any unpaid balance on this Contract. You authorize any insurer to pay us directly. You authorize us to sign your name to any check, draft or other papers necessary to obtain such insurance payments. If insurance proceeds paid to us do not pay off this Contract, you are responsible for the balance. If you fail to maintain, or to provide us upon request evidence of, the Required Insurance, we may, but shall not be obligated to, get comparable insurance covering our interest only, or our interest and your interest, from an insurer of our choice. You will repay us the cost for any such insurance we get (based on the insurer's filed rates) as we shall specify: either (1) over the term of the insurance policy or (2) over the remaining term of this Contract, in each case in addition to the payments called for by the Payment Schedule. You will pay us interest at the Contract Rate on any such cost not repaid immediately by you. Such insurance may be placed retroactively to the date your insurance lapsed or terminated and is likely to be more expensive insurance you can get on your own.

You agree that, to the extent permitted by law, we may receive from the insurer, or retain from the premium for any insurance we get, compensation and reimbursement for our administrative and out-of-pocket costs incurred in connection with such insurance and monitoring your compliance with the insurance provisions of this Contract, and an affiliate may receive a commission.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS THE BOX BELOW IS CHECKED.

☐ If the foregoing box is checked, the policy you are purchasing from Seller (but not any policy we purchase) will include liability coverage for bodily injury or property damage in addition to the minimum property insurance.

☐ **OPTIONAL BUYER PROTECTION/SERVICE PLAN:** Buyer protection and service plans are voluntary and are not required to obtain credit. If the foregoing box is checked, you have elected to purchase the following optional buyer protection or service plan (the 'Plan')

The Plan covers _____
and will be in effect _____ . See the Plan document
for details.

**OPTIONAL "GAP" COVERAGE:** Gap coverage is voluntary and is not required to obtain credit. Seller will not provide it unless you sign below and agree to pay the fee or premium of $ ___0.00___ for coverage for the entire term of this Contract. By your signature below you request the optional gap coverage described above for the fee or premium set forth above.

_____   _____   _____   _____
Borrower                                 d/o/b      Borrower                                 d/o/b

**LATE CHARGE; DISHONORED CHECK CHARGE:** Each time you fail to make a payment in full within 15 days after it is due, you will pay a late charge of five percent (5%) of the unpaid amount of the payment, or five dollars ($5.00), whichever amount is less. If a check, draft or similar instrument you give us for payment on your account is not paid or is dishonored by your financial institution, you will pay us a bad check charge of twenty-five dollars ($25) or five percent (5%) of the face amount of the check or instrument dishored, whichever is greater, or the maximum amount allowed by applicable law, if less.

**DOWN PAYMENT:** You agree to pay, or apply to the Cash Price on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. You promise that any property traded-in is free from any liens, security interests, encumbrances or other claims and that you are, at the time of the trade-in, the legal owner of any property traded-in.

**ASSUMPTION:** Someone buying your Manufactured Home may, subject to conditions, be allowed to assume the remainder of this Contract on the original terms.

**SECURITY:** To secure your payment of all sums due or which become due under this Contract, and your performance of all other terms of this Contract, you grant us a security interest in (1) the Manufactured Home and all accessions, attachments, accessories, replacements and additions to it, whether added now or later (collectively, the "Property"), (2) your rights to refunds of premiums for and payments under and proceeds of any insurance, gap coverage or Plan purchased under or pursuant to the terms of this Contract and (3) proceeds and products of all of the foregoing. Despite any other provision of this Contract, however, we are not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law.

Our security interest shall remain in effect until you have paid the balance in full on this Contract. You agree to pay any filing or recording fees, and to take all other action, necessary for us to get, perfect and keep in force our security interest, and to pay any applicable release fees.

**GENERAL TERMS:** The law of Georgia and applicable federal laws and regulations will govern this Contract. We do not intend to charge or collect any interest or fee that is more than the law allows, and if we do, we will apply the excess first to the pricipal balance, and we will refund any excess if you have paid this Contract in full. If any provision of this Contract is not enforceable, this Contract will remain enforceable without such provision.

**PREPAYMENT: REFUNDS AND CREDITS:** YOU MAY PREPAY THIS CONTRACT IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY. Any partial prepayment will not excuse any later scheduled payments until you pay in full. If you (1) prepay this Contract in full, or (2) default and fail to cure your default and we demand payment of the entire balance due on this Contract, no portion of any Prepaid Finance Charge will be rebated "unless required by law."

**OWNERSHIP AND DUTIES TOWARD THE PROPERTY:** (a) You will not create or suffer any lien on the Property other than ours, and you will not sell or transfer any rights in the Property without our prior written consent; (b) you will keep the Manufactured Home in your possession and in good condition and repair and you will not use it for business or rent it to anyone without getting our permission in writing first; (c) unless otherwise agreed by us in writing, the Manufactured Home will be located at the "Location of Manufactured Home after delivery to Buyer" specified in this Contract and you will not allow the Manufactured Home to become a part of real estate or to otherwise lose its treatment as personal property under applicable law; (d) you will pay all taxes, fees, expenses, and assessments on or against the Property, and all related park or lot rent and related charges, when due, and provide us with proof of payment promptly when we ask for it; and (e) you will notify us promptly of any loss or damage to or confiscation or theft of the Property.

**DEFAULT:** You will (except as prohibited by law) be in default on this Contract if any one or more of the following occurs or exists:

A.    You fail to make a payment hereunder when it is due.

B.    You fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).

If you default, you agree to pay our costs for collecting amounts owing, including court costs, reasonable attorneys' fees (if we refer this Contract for collection to an attorney who is not our salaried employee), including attorney's fees in any bankruptcy proceeding or any appeal, and reasonable fees for repossession, repair, storage, and sale of any of the Property.

If a default occurs as to any one or more or all of you, we may exercise our remedies against one or more or all of you.

**NOTICE OF DEFAULT:** If you are in default, we will send you a Notice of Default and Right to Cure Default ("Notice") when required by law. The Notice will explain why you are in default and how you can cure it. If a Notice is required by law, we will not accelerate the unpaid balance of this Contract, repossess or foreclose on any Property until after we send you the Notice and any cure period it describes has passed. If a Notice is not required by law we may do so without notice. We may not be required to send you a Notice if (1) you have abandoned the Manufactured Home, (2) you received two Notices in the prior one-year period, or (3) other extreme circumstances exist.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and by this Contract. If required by law, before using a remedy, we will send you a notice and wait for any cure period. Our remedies include the following:

A.    We may require you to immediately pay us, subject to any refund required by law, the entire principal balance, plus earned interest and all other agreed charges.

B.    We may, but are not required to, pay taxes, fees, expenses, charges or assessments respecting the Property, or pay to satisfy liens on or to make repairs to the Property, if you have not done so as required in this Contract. Any amount we pay may be added to the amount you owe us.

At our option, we may (1) demand that you repay these amounts immediately, (2) add these amounts to your regularly scheduled payments (3) add these amounts as additional installments due, or (4) add the amounts to the final installment due on this Contract. You will pay interest at the Contract Rate on any such amounts not repaid by you.

C.    We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

D.    We may immediately take possession of the Property by legal process or self-help, if we do so lawfully. We may then sell the Property and apply what we receive to our reasonable expenses and then toward you obligations, as allowed by law.

E.    If we repossess, we also may take possession of any other property anywhere in or attached to the Property. We agree to return all such property to you upon your request. We may hold the property for you at your risk without liability on our part. If we take possession of any such property, we will notify you in writing. If you do not then promptly claim and take possession of this property, we have your permission to dispose of it in a reasonable manner. You will pay any reasonable charges for storing or shipping such property which we may incur.

F.    We may cancel any insurance for which all or a part of the premium or charge was financed hereunder, or any insurance obtained by us hereunder, any gap coverage or any Plan and obtain a refund of unearned premiums or charges and apply them against amounts owing hereunder.

G.    Except when prohibited by law, we may sue you for additional amounts if the sale proceeds do not pay all you owe us.

Exercising any one or more of these remedies against any one or more of you, will not prevent us from pursuing any other remedy or remedies against one or more of you in the future. Except as limited by law. If we do not act on any default, we do not give up our right to later treat that type of event as a default.

**OBLIGATIONS INDEPENDENT:** Each of you who signs this Contract is independently responsible to pay it and to keep the other promises made in this Contract. This is true even if: (a) someone else has also signed it; (b) we release or do not try to collect from another who is also responsible to pay this Contract; (c) we release any security or do not try to take back any Property; (d) we give up any other rights we may have; and (e) we extend new credit or renew this Contract.

**COMPLETE AGREEMENT:** This Contract constitutes the complete agreement between you and us concerning the subject matter hereof and may only be amended by a writing executed by you and us.

**DISCLAIMER OF WARRANTIES:** NO WARRANTIES, EXPRESS OR IMPLIED, FOR MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE, HAVE BEEN MADE BY US ABOUT THE MANUFACTURED HOME. YOU ACKNOWLEDGE HAVING EXAMINED THE MANUFACTURED HOME AND, IF IT IS USED, ACCEPT THE MANUFACTURED HOME "AS IS". THIS DISCLIAMER DOES NOT AFFECT (1) ANY WARRANTIES REQUIRED BY LAW, (2) ANY WARRANTIES FROM THE MANUFACTURER, (3) WRITTEN WARRANTIES BY THE SELLER OR (4) SERVICE CONTRACTS MADE WITH THE SELLER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

SELLER INTENDS TO SELL THIS CONTRACT TO NATIONSCREDIT MANUFACTURED HOUSING CORPORATION. THAT SALE MAY BE AT A DISCOUNT, SO THAT SELLER WILL RECEIVE LESS THAN THE AMOUNT FINANCED. SELLER MAY ALSO RECEIVE A PREMIUM OR SHARE IN PART OF THE INTEREST YOU WILL PAY. THE FINANCE CHARGE AND OTHER TERMS OF

THIS CONTRACT MAY NOT BE THE BEST FINANCING TERMS YOU COULD OBTAIN ELSEWHERE. IF YOU CAN OBTAIN CHEAPER FINANCING ELSEWHERE YOU SHOULD CONSIDER DOING SO AND PAYING THE SELLER ALL CASH.

## NOTICE TO BUYER

(1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a copy of the contract you sign Keep it to Protect your legal rights.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 THROUGH 4 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.

Buyer(s):

X _____  8/28/98          X _____
  Signature                         Date              Signature                         Date

SELLER'S SIGNATURE (Seller's signature to this Contract is Seller's signature to the attached Assignment by Seller as well):

X _____  8-28-98
  Signature                         Date

GUARANTEE OF BUYER'S PROMISES. The undersigned, separately and together, agree(s) to pay all amounts owing under this Retail Installment Contract, whether now due or due in the future. The undersigned also agree(s) to all the terms and conditions of this Retail Installment Contract.

On _____ I (we) read, signed and received a completely filled in copy of this RETAIL INSTALLMENT CONTRACT.

Cosigner: X_____          Cosigner: X_____

## ASSIGNMENT BY SELLER

Effective upon receipt of payment therefor, Seller hereby transfers and assigns to NationsCredit Manufactured Housing Corporation ("NationsCredit") all of Seller's right, title and interest in and to the foregoing Contract and the Property and collateral described therein, without recourse as to Buyer(s) obligation of payment except as may otherwise be provided in any Dealer Agreement (a "Dealer Agreement") between Seller and NationsCredit. NationsCredit does not assume any of Seller's obligations under such Contract. Seller represents and warrants to NationsCredit that (1) such Contract represents a bona fide sale of the Manufactured Home and such Contract constitutes the complete agreement of the parties thereto respecting the transactions covered thereby (2) such Manufactured Home has been delivered to and accepted by the Buyers named therein in good condition and repair; (3) such Contract is the legal, valid, and binding obligation of all parties who have signed such Contract ("Obligors") and is enforceable against each and all of them in accordance with its terms; (4) the signature of each Obligor on such Contract is genuine and each Obligor was at least 18 years old at the time of such signature; (5) such Contract is not and will not be subject to any defense, claim, counterclaim, or right of offset or recision against the Seller or NationsCredit; (6) Seller has complied with all federal, state and local laws and regulations which apply to such Contract and the transactions contemplated thereby, and such Contract is in proper form and has been properly filled in; (7) Seller is the sole and unconditional owner of such Contract and no third party has any security interest, right, claim or title in or to such Contract or the Property; (8) the security interest in the Property which is created in such Contract is a valid first priority perfected security interest in the Property, duly perfected in the name of NationsCredit. Seller makes each of the foregoing representations and warranties to NationsCredit to induce NationsCredit to purchase such Contract and they shall survive such purchase. If any of the foregoing representations or warranties is untrue or misleading in any respect, Seller will promptly repurchase this Contract from NationsCredit (without representation or warranty or recourse to NationsCredit) by paying to NationsCredit the unpaid balance of the amount owing under this Contract. Seller's obligations herein are in addition to all other obligations of Seller under any Dealer Agreement. In the event NationsCredit sustains any expense, loss or damage (including reasonable attorneys' fees (whether or not suit is filed)) by reason of any claim or defense which the Obligors have against Seller, Seller shall in addition to its repurchase obligations reimburse NationsCredit upon demand for all such expense, loss or damage. Seller waives all demands and notices of default and agrees that NationsCredit may extend time for an Obligor's performance or fail to pursue or release, by operation of law or otherwise, rights against any Obligor without releasing Seller hereunder. Upon NationsCredit's request Seller will apply for and promptly pay to NationsCredit any applicable refunds on any insurance sold by Seller in connection with such Contract, any gap coverage and any related Plan. NationsCredit's acceptance of the foregoing assignment shall be evidenced by its payment to Seller therefor. Seller's signature to such Contract shall be its signature to this assignment as well.

## STATE OF GEORGIA      Certificate of Title      STATE OF GEORGIA

**THIS TITLE MUST BE TRANSFERRED IMMEDIATELY UPON CHANGE OF VEHICLE OWNERSHIP**

| MANUFACTURER'S ID NO. | MAKE | YR. MODEL | TYPE OF BODY | MODEL | CYL. | DATE ISSUED |
|---|---|---|---|---|---|---|
| 14901729A | REDMAN | 98 | MB HME | WORTHINGTO | | 10-01-98 |

| DATE VEHICLE PUR. | FUEL | NEW OR USED | ODOMETER* (ACTUAL MILEAGE) | PREVIOUS TITLE NO. | STATE OF ISSUE | NO. OF LIENS | COLOR | CURRENT TITLE NO. |
|---|---|---|---|---|---|---|---|---|
| 08-28-98 | | NEW | | | | 1 | | 35402423 |

**OWNER**

FREESE, HARRY J
1817 BLUE CREEK RD

HOGANSVILLE    GA    30230

**1ST LIEN OR SECURITY INTEREST**

NATIONSCREDIT MFTD HSG CORP
10401 DEERWOOD PARK BLVD

JACKSONVILLE    FL    32256

**2ND LIEN OR SECURITY INTEREST**

**3RD LIEN OR SECURITY INTEREST**

* ODOMETER READING IS ACTUAL MILEAGE OF THE VEHICLE UNLESS OTHERWISE INDICATED BELOW

MAIL TO

NATIONSCREDIT MFTD HSG CORP
10401 DEERWOOD PARK BLVD

JACKSONVILLE    FL    32256

Exhibit "B"

**RELEASE OF LIEN OR SECURITY INTEREST**

| DATE OF RELEASE | SECURITY INTEREST HOLDER | AUTHORIZED AGENT |
|---|---|---|
| 1ST LIEN ___ | ___ | BY ___ |
| 2ND LIEN ___ | ___ | BY ___ |
| 3RD LIEN ___ | ___ | BY ___ |

The Georgia Department of Revenue hereby certifies that on Application duly made the person named herein is registered by this Department as the lawful owner of the vehicle described subject to the liens or security interests herein set forth and such liens or security interests as may subsequently be filed with the Commissioner. This Certificate of Title is issued pursuant to the Motor Vehicle Certificate of Title Act and is subject to the provisions thereof.

STATE REVENUE COMMISSIONER

# STATE OF GEORGIA — Certificate of Title — STATE OF GEORGIA

## THIS TITLE MUST BE TRANSFERRED IMMEDIATELY UPON CHANGE OF VEHICLE OWNERSHIP

| MANUFACTURER'S ID NO. | | MAKE | YR. MODEL | TYPE OF BODY | MODEL | CYL. | DATE ISSUED |
|---|---|---|---|---|---|---|---|
| 14901729B | | REDMAN | 98 | MB HME | WORTHINGTO | | 10-01-98 |

| DATE VEHICLE PUR. | FUEL | NEW OR USED | ODOMETER* (ACTUAL MILEAGE) | PREVIOUS TITLE NO. | STATE OF ISSUE | NO. OF LIENS | COLOR | CURRENT TITLE NO. |
|---|---|---|---|---|---|---|---|---|
| 08-28-98 | | NEW | | | | 1 | | 35402424 |

**OWNER**

FREESE, HARRY J
1817 BLUE CREEK RD

HOGANSVILLE        GA        30230

**1ST LIEN OR SECURITY INTEREST**

NATIONSCREDIT MFTD HSG CORP
10401 DEERWOOD PARK BLVD

JACKSONVILLE        FL        32256

**2ND LIEN OR SECURITY INTEREST**

**3RD LIEN OR SECURITY INTEREST**

*ODOMETER READING IS ACTUAL MILEAGE OF THE VEHICLE UNLESS OTHERWISE INDICATED BELOW
MAIL TO

NATIONSCREDIT MFTD HSG CORP
10401 DEERWOOD PARK BLVD

JACKSONVILLE        FL        32256

The Georgia Department of Revenue hereby certifies that on Application duly made the person named herein is registered by this Department as the lawful owner of the vehicle described subject to the liens or security interests herein set forth and such liens or security interests as may subsequently be filed with the Commissioner. This Certificate of Title is issued pursuant to the Motor Vehicle Certificate of Title Act and is subject to the provisions thereof.

## RELEASE OF LIEN OR SECURITY INTEREST

| DATE OF RELEASE | SECURITY INTEREST HOLDER | AUTHORIZED AGENT |
|---|---|---|
| 1ST LIEN _____ | _____ | BY _____ |
| 2ND LIEN _____ | _____ | BY _____ |
| 3RD LIEN _____ | _____ | BY _____ |

STATE REVENUE COMMISSIONER

When Recorded Return To:
Green Tree Servicing LLC
Attn: Document Custody, T326
7360 South Kyrene Rd
Tempe, AZ 85283

```
       OFFICIAL RECORDS OF
      MARICOPA COUNTY RECORDER
           HELEN PURCELL
    2015-0128768 02/26/15 03:56 PM
          PAPER RECORDING

    0147972-5-7-1
    ramirezp
```

# LIMITED POWER OF ATTORNEY

| TO | **GREEN TREE SERVICING LLC** |
|---|---|
| **FROM** | **NATIONSCREDIT FINANCIAL SERVICES CORPORATION** |
| **DEAL** | **GreenPoint and LaSalle (BAC MH)** |
| **INVESTOR** | **BANK OF AMERICA** |
| **ISSUE DATE** | **02/25/15** |
| **EFFECTIVE DATE** | **02/01/15** |
| **EXPIRATION DATE** | **NA** |

# LIMITED POWER OF ATTORNEY

## KNOW ALL PERSONS BY THESE PRESENTS:

NATIONSCREDIT FINANCIAL SERVICES CORPORATION, a North Carolina corporation ("NationsCredit") [1], by these presents does hereby make, constitute and appoint Green Tree Servicing LLC, a limited liability company ("Servicer"), NationsCredit's true and lawful attorney-in-fact, and hereby grants it authority and power to take, through its duly authorized officers, the Actions (as such term is defined herein) in NationsCredit's name, place and stead. This limited power of attorney ("Limited Power of Attorney") is given in connection with and pursuant to that certain Supplement to Servicing Agreement dated as of July 16, 1999, by and between NationsCredit Manufactured Housing Corporation and GreenPoint Credit Corp., which supplements that certain Servicing Agreement dated as of September 30, 1998 (together, as amended, restated, supplemented or otherwise modified from time to time, the "Agreement"), by and between Security Pacific Housing Services, Inc., Bank of America, FSB, Bank of America National Trust and Savings Association, and GreenPoint Credit Corp., pursuant to which Servicer has the duty to provide servicing, administration, and management and disposition services with respect to certain mortgage loans owned by NationsCredit (such loans, the "Mortgage Loans," and such servicing arrangement, the "Servicing Arrangement").[2] Each of the Mortgage Loans comprises a promissory note evidencing a right to payment and performance secured by a security interest or other lien on real property ("Property") evidenced by one or more mortgages, deeds of trust, deeds to secure debt or other forms of security instruments (each, a "Security Instrument"). The assignment of a Security Instrument, as used herein, shall also include the assignment of the beneficial interest under a deed of trust.

As used above, the term "Actions" shall mean and be limited to the following acts, in each case with respect to one or another of the Mortgage Loans or the Property and as mandated or permitted by federal, state or local laws or other legal requirements or restrictions—including without limitation federal and state debt collection laws—applicable to Servicer or NationsCredit in connection with mortgage loans serviced by Servicer or on behalf of NationsCredit as owner:

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is or hereafter shall become due and payable) belonging to or claimed by NationsCredit in respect of the Mortgage Loans and Property, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee under a deed of trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale (or any other statement or notice that is now or hereafter becomes necessary or appropriate to protect or enforce NationsCredit's interest in the Mortgage Loans and Property), filing proofs of claim, motions for relief from the automatic stay or other writings in a bankruptcy proceeding, taking deeds in lieu of foreclosure, negotiating and entering into "cash for keys" agreements, evicting and foreclosing on the Properties.

2. Subordinate the lien of a mortgage or deed of trust (i) for the purpose of refinancing

---

[1] For the avoidance of doubt, this Limited Power of Attorney is intended to cover Actions, as such term is defined herein, taken in the name of: NationsCredit Financial Services Corporation; NationsCredit Financial Services Corporation, successor by merger to NationsCredit Manufactured Housing Corporation

[2] The Agreement is subject to a Consent, Modification and Assumption Agreement, dated as of September 30, 2004, by and between, among others, GreenPoint Credit, LLC (formerly known as GreenPoint Credit Corp.) and Servicer, pursuant to which GreenPoint Credit, LLC assigned its rights, duties and obligations under the Agreement to Servicer, and Servicer assumed such rights, duties and obligations.

Mortgage Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

3. Execute and/or file such documents and take such action as is proper and necessary to defend NationsCredit in litigation and to resolve any litigation where Servicer has an obligation to defend NationsCredit.

4. Transact business of any kind regarding the Mortgage Loans, as NationsCredit's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

5. Execute, complete, or file bonds, Security Instruments and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of releases, satisfactions, reconveyances, assignments, loan modification agreements, loan assumption agreements, subordination agreements, property adjustment agreements, and other instruments pertaining to Security Instruments, bills of sale and execution of deeds and associated instruments, if any, conveying or encumbering the Property, in the interest of NationsCredit.

6. Correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by NationsCredit or a prior transferor.

7. Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

8. Execute and deliver the following documentation with respect to the sale of REO Property, including, without limitation: listing agreements; purchase and sale agreements; grant/warranty/quit claim deeds or other deeds causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

9. Perform all steps necessary to realize on insurance proceeds, including but not limited to insurance proceeds relating to foreclosures, short sales, deeds in lieu of foreclosure, sale of REO Property, and the exercise of any rights of NationsCredit under any insurance agreement.

10. Endorse checks and other payment instruments made payable to the order of NationsCredit that have been received by Servicer from mortgagors or any insurer in respect of insurance proceeds related to any Mortgage Loans.

With respect to the Actions, NationsCredit gives to said attorney-in-fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as NationsCredit itself might or could do, and hereby does ratify and confirm all that said attorney-in-fact shall lawfully do or cause to be done by authority hereof. All Actions taken by said attorney-in-fact on or after February 1, 2015, which the said attorney-in-fact could properly have taken pursuant to this Limited Power of Attorney, will be, and hereby are, ratified and affirmed. Any Action taken pursuant to this Limited Power of Attorney shall be binding on

NationsCredit and NationsCredit's successors and assigns.

NationsCredit represents to those dealing with such attorney-in-fact that they may rely upon this Limited Power of Attorney until they receive actual notice of termination or revocation thereof or unless an instrument of revocation by NationsCredit has been made in writing. Any and all third parties dealing with Servicer as NationsCredit's attorney-in-fact may rely completely, unconditionally and conclusively on the authority of Servicer, and need not make any inquiry about whether Servicer is acting pursuant to the Servicing Arrangement. Any purchaser, title insurance company, public official or other third party may rely upon a written statement by Servicer that any subject mortgage loan or real estate owned by NationsCredit or by Servicer for NationsCredit as a result of the termination of the related Mortgage Loan, is subject to the authority and power conferred to the Servicer pursuant to the Servicing Arrangement and this Limited Power of Attorney.

Nothing contained herein shall be construed to grant Servicer the power to (i) initiate or defend any suit, litigation, or proceeding in the name of NationsCredit or be construed to create a duty of NationsCredit to initiate or defend any suit, litigation, or proceeding in the name of Servicer, (ii) incur or agree to any liability or obligation in the name or on behalf of NationsCredit, or (iii) execute any document or take any action on behalf of, or in the name, place, or stead of, NationsCredit, except, in each case, as provided herein.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF,** NationsCredit Financial Services Corporation has executed this Limited Power of Attorney this 25th day of February, 2015.

**NATIONSCREDIT FINANCIAL SERVICES CORPORATION**

By: _____

Witness: _____

Name: _____Gregory W. Blackmer_____

Name: _____Suzanne Baw_____

Title: _____Vice President_____

Witness: _____

Attest: _____

Name: _____Ofelia T. Carlos_____

Name: _____James Raulerson_____

Title: _____Assistant Secretary_____

STATE OF FLORIDA          :
                                            : ss.
DUVAL COUNTY          :

This instrument was acknowledged before me on the 25th day of February, 2015, by Gregory W. Blackmer, Vice President, and James Raulerson, Assistant Secretary, of NationsCredit Financial Services Corporation, a North Carolina corporation, on behalf of said corporation.

_____
Notary Public Name:
My commission expires:

MARGARET DONNELLY
MY COMMISSION # FF 154706
EXPIRES: September 14, 2018
Bonded Thru Budget Notary Services

# Delaware

*The First State*

PAGE 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"DITECH MORTGAGE CORP", A CALIFORNIA CORPORATION,

"DT HOLDINGS LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "GREEN TREE SERVICING LLC" UNDER THE NAME OF "GREEN TREE SERVICING LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE THIRTEENTH DAY OF AUGUST, A.D. 2015, AT 1:35 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTY-FIRST DAY OF AUGUST, A.D. 2015, AT 12:05 O'CLOCK A.M.

Jeffrey W. Bullock, Secretary of State

2458190   8100M

151168309

AUTHENTICATION: 2641973

DATE: 08-13-15

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 01:35 PM 08/13/2015*
*FILED 01:35 PM 08/13/2015*
*SRV 151168309 – 2458190 FILE*

# STATE OF DELAWARE
# CERTIFICATE OF MERGER

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby executes the following Certificate of Merger:

**FIRST**: The surviving limited liability company is **Green Tree Servicing LLC**, a Delaware limited liability company, and the corporation and limited liability company being merged into this surviving limited liability company are:

> **DT Holdings LLC**, a Delaware limited liability company, and
> **Ditech Mortgage Corp**, a California corporation.

**SECOND:** The Agreement and Plan of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations and limited liability companies pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

**THIRD:** The name of the surviving limited liability company is hereby amended to **Ditech Financial LLC**, a Delaware limited liability company (as such surviving entity, the "Surviving Limited Liability Company").

**FOURTH:** The mergers are to become effective as of 12:05 AM EDT on August 31, 2015.

**FIFTH:** The Agreement and Plan of Merger is on file at 3000 Bayport Drive, Suite 880, Tampa, FL 33607, the principal place of business of the Surviving Limited Liability Company.

**SIXTH:** A copy of the Agreement and Plan of Merger will be furnished by the Surviving Limited Liability Company on request, without cost, to any stockholder or member of the constituent corporations or limited liability companies, as applicable.

[The remainder of page intentionally left blank.]

**IN WITNESS WHEREOF,** said Surviving Limited Liability Company has caused this certificate to be signed by an authorized officer, the 4th day of August, 2015.

**GREEN TREE SERVICING LLC**

By: _Wanda Lamb Lindow_

Name: Wanda Lamb-Lindow

Title: Assistant Secretary

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES
20180045379  01/19/2018  08:21
ELECTRONIC RECORDING

When Recorded Return To:
Ditech Financial LLC
Attn: Document Custody, T326
2100 E Elliot Rd.
Tempe, AZ 85284

TPMF20171-4-1-1--
Yorkm

# LIMITED POWER OF ATTORNEY

| TO | DITECH FINANCIAL LLC |
|---|---|
| FROM | TOWD POINT MASTER FUNDING TRUST |
| DEAL DATE | NOVEMBER 1, 2017 |
| DEAL | TPMF 2017-1 |
| ISSUE DATE | JANUARY 16, 2018 |
| EXPIRATION DATE | N/A |

## LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is made in connection with that Assignment Assumption and Recognition Agreement, dated December 6, 2017, among  Bank of America National Trust and Savings Association ("BANT"), Security Pacific Housing Services, Inc. ("SPHS") ("BANT" and, together with SPHS, the "Original Owners"), Towd Point Master Funding LLC ("Assignee") and Ditech Financial LLC ("Servicer") (as successor by merger to Greenpoint Credit Corp.), which assigned that certain Servicing Agreement, dated as of September 30, 1998, among the Original Owners, Bank of America, FSB and the Servicer (the "Servicing Agreement"), as assigned to Towd Point Master Funding Trust 2017-PM18, a Delaware statutory trust (the "Owner") with an address of 875 Third Avenue, 10th Floor, New York, NY  10022, pursuant to that certain Assignment and Assumption Agreement, dated December 6, 2017, between the Owner, as assignee and Assignee, as assignor..

Owner hereby makes, constitutes and appoints Servicer for Owners' benefit and in Owners' name, place, and stead, Owners' true and lawful attorney-in-fact, with full power of substitution, to act in connection with the servicing of certain mortgage loans and related real property with respect to the Servicing Agreement for the limited purpose of performing such acts and executing and delivering such documents as noted below.

1. Mortgage/trust deed assignment;

2. Substitution of trustee;

3. Deeds of conveyance (including, without limitation, warranty deeds, grant deeds and quitclaim deeds);

4. Trust deed reconveyance and mortgage release documents;

5. Partial releases;

6. Affidavits (including, without limitation, lost note affidavits, military affidavits and affidavits of indebtedness);

7. HUD-1 settlement statements;

8. Contracts/purchase agreements for sale of real estate; and

9. All other normal and customary documents and acts related to the servicing, foreclosure of mortgage loans, eviction actions, and/or sale of real estate.

This appointment shall not be assigned to any third party by Servicer without the written prior consent of Owner, which may be provided in its sole discretion, and this Limited Power of Attorney shall survive unless an instrument of revocation has been made in writing by the undersigned or the Servicing Agreement has been terminated in accordance with its terms.

Owner will not be responsible for inspection of any items being executed pursuant to this Limited Power of Attorney and as such, is relying upon the Servicer to undertake all necessary and prudent practices and procedures that may be necessary to confirm the accuracy of such items.

Any third party may rely upon this Limited Power of Attorney, and shall be entitled to rely on a writing signed by the Servicer to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan or commitment of Servicer for all purposes contemplated by this Limited Power of Attorney.

Servicer shall not be obligated to furnish bond or other security in connection with its actions hereunder.

Nothing in this Limited Power of Attorney shall be construed to prevent Owner from acting on its behalf as the Owner of the mortgage loans and/or the related real property.

If any provision of this Limited Power of Attorney shall be held invalid, illegal or unenforceable, the validity, legality or enforceability of the other provisions hereof shall not be affected thereby. This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York without regard to conflicts of law principles of such state.

(Remainder of page intentionally left blank)

IN WITNESS WHEREOF, Towd Point Master Funding Trust 2017-PM18, as Owner to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this _16_ day of _January_____, 201 8 .

Towd Point Master Funding Trust 2017-PM18
By: FirstKey Mortgage, LLC, a Florida limited
liability company, not in its individual capacity, but
solely as Administrator

By: _____
Name:   **WILLIAM WALENCZYK**
Title:   **AUTHORIZED SIGNATORY**

Witness: _____
Printed Name:   **Maura Toglia**

Witness: _____
Printed Name:   **Celia Daniele**

STATE OF _New York_ .

COUNTY OF _New York_

On the _16_ day of _January_____ in the year 20_18_, before me personally came _William Walenczyk_ to me known , who, being by me duly sworn, did depose and say that he/she/they reside (s) in _New York, New York_ that he/she/they is (are) the _authorized Signatory_ of the _FirstKey Mortgage LLC_, the corporation described in and which executed the above instrument; and that he/she/they signed his/her/their name (s) thereto by authority of the board of directors of said corporation.

WITNESS my hand and official seal.

*[NOTARIAL SEAL]*

Notary Public
My Commission Expires:

**JOSE CHAVEZ**
NOTARY PUBLIC, State of New York
No. 01CH6139294
Qualified in Westchester County
Commission Expires Jan. 03, 20 _22_

Page 3 of 3

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA (ATLANTA)

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.    17-56755-pwb |
| HARRY JAMES FREESE, | ) | |
| | ) | CHAPTER    13 |
|     Debtor. | ) | |
| _____ | ) | JUDGE    PAUL W. BONAPFEL |
| TOWD POINT MASTER FUNDING TRUST | ) | |
| 2017-PM18 | ) | |
| | ) | CONTESTED MATTER |
|     Movant, | ) | |
| v. | ) | |
| | ) | |
| HARRY JAMES FREESE, Debtor, | ) | |
| and MARY IDA TOWNSON, Trustee, | ) | |
| | ) | |
|     Respondents. | ) | |

<u>CERTIFICATE OF SERVICE</u>

      I, the undersigned, an attorney with Padgett Law Group, certify that I am, and at all times hereinafter mentioned was more than 18 years of age; and

      That on the <u>21st day </u>of February 2018, I served a copy of the within *Notice Of Hearing* together with the *Motion for Relief From Stay and Waiver of the 30-Day Requirement of 11 U.S.C. § 362(e),* filed herein, by first class U.S. Mail with adequate prepaid postage, or  electronically via e-mail, to said respondents in this bankruptcy matter as follows:

**By U.S. First Class Mail**

***Debtor***
Harry James Freese
1270 Keans Ct.
Roswell, GA 30075

**And by electronic service**

***Attorney for Debtor***
Howard P. Slomka
Slipakoff & Slomka, PC
Overlook III - Suite 1700
2859 Paces Ferry Rd, SE
Atlanta, GA 30339

***Trustee***
Mary Ida Townson
Chapter 13 Trustee
Suite 2200
191 Peachtree Street, NE
Atlanta, GA 30303-1740

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed On: 2-21-2018 _____          By: /s/ Sarah Wyeth McLaughlin _____
                                                    Sarah Wyeth McLaughlin, GBN 779413